[L. A. No. 3127. Department One.—May 27, 1913.]

SYLVESTER MASCAREL, Appellant, v. J. R. LYNCH, Defendant and Respondent; J. P. GOYTINO, Defendant and Appellant.

LEASE OF FARMING LAND—LESSOR ENTITLED TO PART OF PROCEEDS—AC-COUNTING—FINDINGS.—In an action involving an accounting by a lessee of a farming and dairy business conducted by him on the leased premises, under a lease which provided that the lessor should have a share of the proceeds, the findings determining that the lessee was indebted to the plaintiff, who was the assignee of the lessor, in a specified amount, after deducting various items of counterclaim and setoff due from the lessor, which were equally available as setoffs against his assignee, are held to be sustained by the evidence.

ID.—LESSEE ENTITLED TO SHARE OF PROCEEDS OF SALE OF CATTLE—UN-AUTHORIZED JUDGMENT FOR CONVERSION.—Where by the terms of the lease the lessee, as to certain cattle, was given merely an interest in their proceeds when sold, and his right to their possession ter-minated with the lease, and in the cross-complaint filed by him in the suit for an accounting he did not allege that he owned or was entitled to their possession, but merely alleged that he was "en-titled to one-half of the proceeds of sales thereof," findings in favor of the lessee for one-half of the value of the cattle, based upon the theory that the assignee of the lessor, by taking posses-sion of the cattle, was guilty of a conversion, are outside of the issues, and cannot sustain a judgment in favor of the lessee.

APPEALS from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. W. R. Hervey, Judge.

The facts are stated in the opinion of the court.

H. H. Appel, and Appel & Cooper, for Appellants.

Ward Chapman, for Respondent.

SLOSS, J.—The action was commenced by Sylvester Mas-carel against J. R. Lynch to recover $2,930, alleged to be due plaintiff's assignor, J. P. Goytino, as his share of the proceeds of milk, cream, and hay disposed of by Lynch in the course of farming operations conducted by Lynch upon land leased

to him by Goytino. The lease, a copy of which is attached
to the complaint, let the premises to Lynch for five years
from the first day of May, 1903, required the lessee to plant
and cultivate alfalfa and apple trees upon a given number
of acres, respectively, of the land, and to sow a further acre-
age in grain during each year. The proceeds of grain crops
were to be equally divided between Goytino and Lynch, as
were the proceeds of pasturage, or of sale of stock placed on
the ranch by either party. Of the amount sued for $930 is
claimed on account of milk and cream sold and two thousand
dollars on account of hay.

Lynch answered, denying the indebtedness set out in the
complaint. He also filed a cross-complaint against the plain-
tiff and Goytino. By this pleading he averred full perform-
ance on his part of the terms of the contract of lease above
referred to, except with respect to provisions which had been
waived by mutual consent. He alleged that Goytino's share
of the amounts received in conducting the ranch was as fol-
lows: For hay sold, $868.62; for stock pastured, $491.23;
for proceeds of a creamery business conducted on the ranch
by Lynch and Goytino jointly, under an agreement made in
1906, $716.46; for profits realized from the raising and sale
of hogs under a like agreement made in 1905, $350.15; for
cattle purchased and sold, including the original purchase
price advanced by Goytino, $2,315, of which $2,295 had been
paid, leaving a balance due, on the last item, of twenty dol-
lars. The total credit due Goytino on all these accounts was
alleged to be $2,255.44, and defendant claimed, for money paid
to Goytino or expended on his behalf, the sum of $2,768.10,
leaving a balance to defendant's credit of $512.66.

The cross-complaint further alleged that about 180 head
of cattle, besides calves, remained upon the premises, and that
defendant is entitled, under the lease, to one-half of the pro-
ceeds of the sale of these; that Goytino has transferred his
interest in the contract "and the properties thereof" to Mas-
carel; that Mascarel is in possession of the said cattle, and
claims them as his own, repudiating the rights of Lynch in
the same, and in any of the proceeds thereof. The pleading
prays for an accounting, the sale of the cattle, and the distri-
bution of the proceeds to the parties entitled.

The plaintiff and Goytino answered the cross-complaint separately, denying most of its allegations.

The findings were, in the main, in favor of the defendant Lynch. The court found that he had, except with respect to matters that had been waived, performed all the obligations of his contract. On the items of receipts and expenditures set up by Lynch, the findings were that the total sum to be credited to Goytino was $2,315.44, instead of $2,255.44, as averred in Lynch's cross-complaint, and that Goytino had received $2,243.30, instead of $2,768.10, the amount stated by Lynch. On these items, which included everything in dispute between the parties except Lynch's claim to an interest in the cattle remaining on the ranch and unsold, the net result of the findings was to leave Lynch indebted to plaintiff, Goytino's assignee, in the sum of $72.14, whereas the cross-complaint claimed a balance in favor of Lynch, of $512.66.

With respect to the cattle remaining on the ranch, the court found that Lynch held over for a year after the termination of the term specified in the lease, that in May, 1909, he surrendered possession to plaintiff and Goytino, that at that time there were upon the premises 182 head of cattle, 50 of which belonged to the plaintiff, Mascarel, and the remaining 132 had been placed on the land by Goytino and Lynch, under the terms of said lease, and jointly owned by said parties, but that plaintiff and Goytino repudiated the rights of Lynch, and converted the cattle to their own use. It was further found that the 132 cattle were of the reasonable value of $2,440, of which Lynch is entitled to one-half, or $1,220. Deducting from the last-named figure the balance of $72.14, found to be due plaintiff on the other items of the account, the court found a balance in favor of Lynch on all accounts of $1,147.86. Judgment was accordingly entered in favor of Lynch against Mascarel and Goytino for this sum of $1,147.86.

Mascarel and Goytino appeal, separately, from the judgment and from the order denying their respective motions for a new trial.

The appellants, respectively, attack the sufficiency of the evidence to support most of the findings of the court on the issues we have outlined. The consideration of the points made may well be divided into two parts, one dealing with the findings covering various items on which Lynch was found

to be indebted to plaintiff in the sum of $72.14, the other with the findings upon which the court determined that Mascarel and Goytino were liable to Lynch for $1,220, one-half of the value of the cattle remaining on the land.

We are satisfied that the findings establishing the balance arising from the various items involved in the first of these branches are supported by sufficient evidence. There is no occasion to undertake, in this opinion, to tabulate and compare the somewhat complicated array of figures contained in the record. We must content ourselves with the statement that the finding of the court, on each item, was supported by the testimony of Lynch and such accounts of his operations as he had kept. It is urged that the finding that Lynch had performed the terms and conditions of the lease, with the exception of the raising of alfalfa, and that this provision was waived, is contrary to the evidence. But Lynch testified that he had told Goytino that the scarcity of water made the planting of alfalfa impracticable and the record justifies the inference that Goytino assented to the omission of such planting. So, too, complaint is made that Lynch did not plant ten acres to apple trees in each year as required by his lease. But there was evidence that some twenty-one acres were thus planted, and that nothing more was done because Goytino did not furnish any more trees. Under the lease, the lessor was to furnish the trees to plant for each year. The point is made that the returns for hay did not cover all the hay grown on the land. It was, however, shown that the portion not so accounted for had been fed to stock, and the evidence was such as to support the conclusion that this course of dealing had been authorized or acquiesced in by Goytino. This method constituted a practical construction of the contract by the parties, which, when acted upon, became binding upon them. Inasmuch as the amounts found due to Lynch on the items now under discussion were less than his indebtness to Goytino, we think such amounts were properly chargeable against plaintiff, although plaintiff was not a party to the lease. Plaintiff was suing as assignee of the claims on account of hay and milk. The cross-demands of Lynch against plaintiff's assignor on other items were proper counterclaims or offsets as against Goytino, and were equally avail-

able as offsets against Goytino's assignee. (Code Civ. Proc., secs. 368, 440.)

The foregoing discussion covers the principal points made upon the findings in which Lynch is determined to be indebted to plaintiff in the sum of $72.14. We have not thought it necessary to discuss in detail the correctness of particular charges made by Lynch against Goytino, and objected to by plaintiff. As to these, it is sufficient to say that some were proper under the terms of the lease, while others were for expenses incurred under the express authority of Goytino. On a review of the entire record, we are satisfied that the findings of the court on the matters considered up to this point are sustained by sufficient proof.

But we think the judgment in favor of Lynch for one-half the value of the cattle remaining on the ranch cannot be upheld. This part of the judgment seems to rest upon the theory that Lynch was the owner of an undivided half of the 132 head, and that the plaintiff and Goytino converted this one-half to their own use. Finding XI declares that the cattle were "jointly owned by the said parties as in the said lease provided," and that the cross-defendants "converted the same to their own use." These findings are entirely outside of the issues. The cross-complaint did not allege that Lynch owned or was entitled to the possession of any part of the cattle. It alleged, merely, that he was "entitled to one-half of the proceeds of sales thereof." And the language of the lease gave him no greater rights, at least in such of the cattle as had been purchased by the lessor. The cross-complaint, further, does not allege a conversion. It states, merely, that Mascarel is in possession, claims the cattle as his own, and repudiates the rights of Lynch in them, or their proceeds. But, in the absence of any allegation to show that Mascarel's possession was wrongful, or that Lynch owned any of the cattle or was entitled to their possession, these averments did not state a conversion. Indeed, the pleading was not framed upon the theory of seeking damages for a conversion. It sought a decree for a sale of the cattle and the distribution of the proceeds according to the agreement. Even if Lynch's ownership and the conversion had been in issue, the finding on these points could not have been sustained.

Under the lease, as we have already pointed out, Lynch was given merely an interest in the proceeds of the cattle when sold. Even his right of possession did not continue after the term of the lease. The taking possession by the cross-defendants was not, therefore, a conversion of Lynch's property. If they wrongfully repudiated his right to a share in the proceeds, he was entitled to no remedy beyond that of a decree declaring his rights, or, as actually asked by him, directing a sale and a division of the proceeds.

While these views necessitate a reversal of the judgment, we see no occasion for a retrial of the issues other than those relating to the cattle remaining on the ranch after the termination of the lease.

The judgment is reversed. The orders denying a new trial are reversed, in so far as they affect the issues raised by paragraph XI of the cross-complaint and the answers thereto. In all other respects the orders denying a new trial are affirmed.

Shaw, J., and Angellotti, J., concurred.